[No. 11600. Department Two. September 17, 1914.]

## HERRING-HALL-MARVIN SAFE COMPANY, *Respondent*, v. PURCELL SAFE COMPANY, *Appellant*.[1]

ARBITRATION AND AWARD—AGREEMENT TO ARBITRATE—TENDER—RIGHT TO SUE. Where it is stipulated in a contract that all differ-ences between the parties arising out of the contract shall be sub-mitted to a board of arbitrators, whose decision therein shall be final and conclusive, no action can be maintained on the contract until after a tender of arbitration of differences to the other party and a refusal thereof.

ARBITRATION AND AWARD—CONTRACTS—DISPUTE BETWEEN PARTIES—DUTY TO ARBITRATE—EVIDENCE. Findings that there was no dis-pute between parties calling for arbitration in such case, is not sus-tained by the evidence, where there was a clear dispute in the plead-ings, and defendant's officers testified to their faithful performance of the contract and its breach by plaintiff, and plaintiff retaliated by attempting to show defendant's nonperformance and its termina-tion by such breach, and upon a second cause of action, the defend-ant offered evidence of the amount due and its nonpayment, while plaintiff offered evidence of breach and sought to counterclaim for damages.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 17, 1913, upon findings in favor of the plaintiff, in consolidated actions for replevin and on an account stated, tried to the court. Reversed.

[1]Reported in 142 Pac. 1153.

*Gay & Kelleran* and *Hughes, McMicken, Dovell & Ramsey,* for appellant.

*Charles P. Spooner* and *George R. Biddle,* for respondent.

FULLERTON, J.—On April 4, 1911, the respondent, Herring-Hall-Marvin Safe Company, entered into a contract with the appellant, Purcell Safe Company, by the terms of which it appointed the latter company its exclusive selling agent, "for the sale and distribution of all of its products, now or hereafter manufactured or handled by it (including especially constructed, contract, bank vaults, and safe deposit work) in and for the states of Oregon, Washington, and Alaska, and that portion of Idaho and Montana now in the Purcell Safe Company's territory." It further agreed to consign stock to the Purcell company to the amount of $20,000, and from time to time additional stock, so as to maintain the consigned stock at the above mentioned figure; further agreeing to sell outright to the respondent company such of its stock as the respondent desired to purchase, allowing it a credit of $15,000. In consideration thereof the appellant company agreed to diligently cover the territory through agencies, traveling men and other means, and to deal exclusively in the respondent's wares. It agreed to send to the respondent company a complete list of all sales of consigned stock on the first of each month, and to remit therefor in thirty days after the date of each sale unless otherwise agreed upon. It also agreed to pay for stock sold outright to it at the end of forty-five days from the date of the arrival of such stock at its destination. The contract contained this further provision, namely:

"Any dispute which may arise between the parties hereto shall be left to the decision of a board of arbitration consisting of one member selected by the party of the first part and one member selected by the party of the second part. In case these two selected members cannot reach an agreement, they shall select a third member of the board. The decision of a majority of this board shall be final and both parties

hereto agree to accept such decision of a majority as final and binding."

On June 11, 1912, the respondent began two actions against the appellant, the one an action in replevin to recover goods, wares and merchandise, which it alleged the appellant wrongfully and unlawfully withheld from it, and which were of the value of $16,469.85; the other an action on an account stated in the sum of $6,377.50.

The appellant, for answer to the replevin action, admitted that it was, at the time of the commencement of the action, in possession of the goods, wares, and merchandise described in the complaint, but denied that its possession was wrongful or unlawful, or that it wrongfully or unlawfully withheld the same from the possession of the respondent; denying further that its value was $16,469.85, or of any greater value than $8,523.51. For an affirmative defense it set up the contract between itself and appellant, before mentioned, and averred that the goods sought to be recovered were goods assigned to it in virtue of the contract; averring further that the respondent had not complied with the conditions of the contract, and had announced that the contract was terminated, and that it would not further comply with such conditions; further averring that, by reason thereof, it had then been damaged by such breach, and would in the future be damaged thereby, in a total sum of $122,689.48. For answer to the action on the account stated, it denied the allegation as to the amount due, and set up affirmatively the same defense it had set up to the replevin action. For reply the respondent admitted the execution of the contract set up in the answer, and admitted that it had terminated the same, but denied all the other allegations of the answer.

After issue joined, the actions were consolidated, and tried to the court without a jury. On the trial, at the close of the respondent's evidence, the appellant moved for a nonsuit, based on the ground that the respondent had not offered to arbitrate, or demanded an arbitration, of the differences

growing out of the agreement. The court overruled the motion, and, at the conclusion of all the evidence, announced a decision in favor of the respondent, according to the prayers of the complaint. Judgment was subsequently entered, and this appeal is prosecuted therefrom.

Of the errors assigned, the only one we find it necessary to notice is the refusal of the court to grant the motion for nonsuit. The refusal to grant this motion we think was error. We have held in a long line of cases that, where parties enter into a contract, and provide therein that all differences between them that may thereafter arise out of the contract shall be submitted to a board of arbitrators whose decision therein shall be conclusive and final upon the parties, no action can be maintained on the contract by either party until he has tendered arbitration of the differences to the other party, and such other party has refused the tender. *Hughes v. Bravinder*, 9 Wash. 595, 38 Pac. 209; *Van Horne v. Watrous*, 10 Wash. 525, 39 Pac. 136; *Lidgerwood Park Water Works Co. v. Spokane*, 19 Wash. 365, 53 Pac. 352; *Herman v. Plummer*, 20 Wash. 363, 55 Pac. 315; *Zindorf Construction Co. v. Western Am. Co.*, 27 Wash. 31, 67 Pac. 374; *Childs Lumber & Mfg. Co. v. Page*, 28 Wash. 128, 68 Pac. 373; *Winsor v. German Sav. & L. Soc.*, 31 Wash. 365, 72 Pac. 66; *North Coast R. Co. v. Kraft Co.*, 63 Wash. 250, 115 Pac. 97; *State ex rel. Noble v. Bowlby*, 74 Wash. 54, 132 Pac. 723.

The trial court rested its decision on the ground that, at the time of the commencement of the action, there existed no matter in dispute between the parties, and made a finding to that effect. In our opinion this conclusion finds no support in the evidence. As will be observed from our statement of the issues, there was a clear dispute in the pleadings on all of the matters essential to a recovery by the respondent. The evidence bore out the allegations of the pleadings. In the replevin action, the officers of the appellant testified to the faithful performance of the contract on the part of the

appellant and its breach by the respondent, to its damage. The respondent retaliated by attempting to show a nonperformance of the contract by the appellant, its right to terminate, and its termination thereof because of such breach. In support of its second action, the respondent offered testimony as to an amount due and of its nonpayment. The appellant offered evidence tending to show a breach of the contract under which the indebtedness was incurred, and sought to counterclaim in damages caused by reason of the breach. Here, clearly, there was a substantial dispute arising out of the contract. It may be that the appellant's claims are not meritorious, or that the weight of the evidence is against it, and that the decision of the court was right upon the merits, but this does not justify a finding that there is no dispute between the parties. The merits of the dispute were not for the court to decide. The parties had agreed upon another tribunal to determine them, and that tribunal might reach another conclusion. It is the fact that a dispute had arisen, not the merits of the dispute, that bars the right to resort to the courts before the remedies provided in the contract for determining them are exhausted.

The respondent suggests a further reason why it should not be compelled to resort to arbitration before bringing action in the courts. It is claimed that the appellant is a wrongdoer; that it is disposing of the consigned stock without accounting for it as the contract requires; that it has thus violated the *status quo* of the parties, and the arbitrators can afford it no adequate relief. But this claim assumes as true the very matter in dispute. It assumes that the appellant has violated the agreement, which, as we have shown, is the controlling issue in the case, and the very issue the parties agreed should be submitted to arbitration. Nor do we think there is any merit in the contention that the arbitrators can afford no adequate relief even should they find that the contract has been violated in the respect mentioned. We know of no reason why they may not find on

all of the facts, and make to the respondent such an award as will make it whole in the premises.

Were it shown that the appellant was insolvent, and unable to respond to the award of the arbitrators, the court might, perhaps, in a proceeding ancillary to the arbitration proceedings, take such steps as were necessary to preserve the property on hand pending the termination of the arbitration, but this question can better be determined when it is regularly presented.

The judgment appealed from is reversed, and the cause remanded with instructions to dismiss the action.

CROW, C. J., PARKER, and MOUNT, JJ., concur.