[No. 1377.   Decided October 18, 1894.]

PETER HUGHES, *Appellant*, v. B. B. BRAVINDER *et al.*,
*Respondents.*

BUILDING CONTRACT — CONSTRUCTION OF — ACTION ON.

Where, by the specifications governing the erection of a build-
ing entered into between the owner and a contractor, all differ-
ences between them are to be submitted to a superintendent, whose
decision shall be final, there can be no action upon the contract un-
til matters in dispute between owner and contractor have been sub-
mitted to, and decided by, such superintendent.

Where, under such a contract, there is no dispute as to the con-
tract price, and the superintendent has allowed certain items for
extra work, the contractor may recover therefor, and the owner
cannot set up any claim for damages in reduction of the contract
price or the extra work when he has not presented such claim to
the superintendent at a meeting of both parties to the contract held
for the purpose of settling the account between them.

*Appeal from Superior Court, Spokane County.*

*Turner, Graves & McKinstry,* for appellant.

*A. G. Avery,* and *F. T. Post,* for respondents.

The opinion of the court was delivered by

HOYT, J.—Appellant had a contract for the erection of
a certain building.   Growing out of such contract and his
rights thereunder, he brought two actions, in one of which
he sought to recover a balance alleged to be due upon the
contract price, and for extra work, and to foreclose his lien
therefor, and in the other to recover for damages for the
rejection and destruction of certain material which he had
provided for use in the erection of the building.   The two
actions were, by consent, consolidated and tried together,
a jury having been waived in the law action.

The contract provided that the building should be erected
in accordance with the conditions of certain plans and speci-

fications thereto attached. There was contained in such specifications a condition in substantially the following language :

"V. Monnier is declared superintendent of the work for the owners. His duties will consist in giving such interpretations, either in language or drawing, as in his judgment the nature of the work may require, and having particular care that any and all work done and materials used for the work be such as hereinafter described; in giving any certificates that the contractor may be entitled to, and in settling all deductions or additions to the contract price which may grow out of alterations of the designs or changes of the plans after the same are under contract; also determining the amount of damages which may accrue from any cause, and particularly to decide upon the fitness of all materials used and work done. It is not incumbent upon the superintendent to notify the contractor to attend to and have in readiness his own work and the required materials, at such times as the progress of the building may require them. If the contractor does not attend to his part of the work, and have his portion of the materials and work in readiness as it may be wanted, then he will be held accountable for all delay and damages in consequence of any such neglect. The contractor must notify the owners whenever he is ready for a settlement, so that if the owners or parties in interest have any bill to file or statement to make, he or they can do so before the superintendent makes his final certificate of adjustment between the parties. The superintendent's opinion, certificate, report and decision on all matters to be binding and conclusive to all parties concerned."

After the building had been completed, as claimed by the plaintiff in accordance with the conditions of the contract, he gave notice to the owners that he was ready to settle, and a meeting with Monnier, the superintendent, was appointed for the next day, at which time the plaintiff and one of the owners, who had had charge of the construction of the building, for himself and his associates, met at the office of said superintendent and proceeded to an ad- .

-justment of matters between them.   The plaintiff before
that time had filed with the superintendent his claim for
extra work, and certain items thereof had been allowed by
such superintendent and others rejected.   The plaintiff was
not satisfied with the action of the superintendent in reject-
ing a part of his claim for extra work, and proceeded to
discuss the question as to the rightfulness of his action in
regard thereto with him.   In this discussion the owner
was not an active participant, but was present and pay-
ing attention thereto.   In the course of such discussion
the plaintiff took from his pocket a claim for damages
growing out of the rejection and destruction of certain
material provided by him for use in the building, which
claim was for a large amount, and handed it to the owner
and asked him what he was going to do about that.   The
owner replied that when it came to the question of damages
he thought the boot would be upon the other foot.   Where-
upon, plaintiff appearing to be dissatisfied with the action
of the superintendent in rejecting a certain part of his
claim for extra work, and with the response to his claim for
damages, the owner said to him, "If you don't like the
way this matter is going you can do the next best thing,"
or words to that effect; whereupon the meeting was broken
up.

At no time while the parties were thus present for the
purpose of adjusting the differences between them was
there anything said by the owner or by the superintendent
about any claim that there should be any deduction from
the contract price or from the bill for extras, which were
properly such under the contract, and the only intimation
that any damages would be claimed against the plaintiff in
any manner growing out of the contract was the remark
made in reply to his demand for damages, as above stated.

Under these circumstances the superior court held that,
since it appeared from the conditions of the contract or speci-

fications above set forth, that all the matters of difference were to be passed upon by the superintendent, no action could be maintained on the contract until he had come to a decision as to the differences between the parties, unless it was made to appear that he had acted fraudulently or refused to act at all; and as it did not appear that the superintendent had adjusted the matters between the plaintiff and the owners, there was no foundation for the actions.

In this construction of the contract we concur, and so far as it appeared that there were differences between the parties which had been submitted to the superintendent, we should hold that no action could be maintained thereon until he had passed upon them, or some reason was shown which would relieve the parties from the conditions of the contract. But as we construe the effect of what occurred at this meeting, there was no question raised between the parties as to the fact of the building having been completed and the contract price stated therefor having been earned. The only difference as to which the superintendent was called upon to decide was as to the question of extras. As to these he had come to a decision, and such decision is binding upon the parties, and the items which he had allowed could be recovered for.

The claim for damages, growing out of the rejection of the material, was, we think, likewise within the terms of the contract as to the matters which should be submitted to the superintendent; for while it is true that the complaint alleges not only the rejection but also the destruction of the material, when all that is said upon that subject is construed the improper rejection of materials prepared for the building is the gist of the claim for damages. Such claim was never presented to the superintendent, and for that reason no recovery could be had thereon. But none of these considerations can prevent a recovery of the amount

of the contract price for the building and of the items for extra work allowed by the superintendent.

The claim of the respondents that the owner was given no opportunity to present any claim for damages, in reduction of the contract price for the building or for the extra work, at the meeting for the purpose of settling the account between the parties, for the reason that pending the conversation in relation thereto the plaintiff left, cannot be sustained. The contract provided that, whenever he desired a settlement, the contractor should give the owner notice. The evident object of such notice was to enable him to present any claims which he might have against the contractor. But it does not follow that he would be entitled to withhold his claims until the superintendent had passed upon the claims against him. On the contrary, the fair interpretation of the contract would require that upon such settlement both parties should present their claims, and the superintendent should then adjust the differences between them. For this reason the respondents are not in a condition to urge the fact that they were not given an opportunity to present their side of the question before the superintendent as arbitrator. Beside, when all that was said at that meeting is construed together it requires us to hold that the respondents expressly waived any claim for damages as against any claim of the contractor, excepting the one for damages growing out of the rejection of the material.

We are, therefore, of the opinion that the superior court erred in holding that there could be no recovery so far as the balance of the contract price and of the price to be allowed for extra work was concerned. It only remains to determine what should be the judgment of this court under these circumstances. We could finally determine the rights of the parties, but, in view of the fact that it was an error of law which led the superior court to enter the

judgment, we think the rights of all parties will be best subserved by its reversal and a re-trial of the issues.

The judgment of the superior court is, therefore, reversed, and the cause remanded for a new trial in accordance with this opinion.

DUNBAR, C. J., and SCOTT, STILES and ANDERS, JJ., concur.