[No. 8726. Department One. September 19, 1910.]

WM. McKIVOR, *Appellant*, v. GEO. MILTON SAVAGE,
*Respondent*.[1]

APPEAL—REVIEW—HARMLESS ERROR. Error in excluding evidence is immaterial, where it appears from the offer of proof that the evidence would have been insufficient to change the determination of the court.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTS—ENGINEER'S CERTIFICATES—CONCLUSIVENESS—BAD FAITH—EVIDENCE—SUFFICIENCY. Estimates of a city engineer, who was made the final arbitrator in a contract, are conclusive, in the absence of fraud or mistake; and

[1] Reported in 110 Pac. 811.

are not shown to be made in bad faith by evidence that measurements of another engineer tended to show rather more excavation than had been allowed, and that a concrete walk was in places thicker than necessary to secure a uniform thickness of four inches, the city engineer having exercised his best judgment.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTS—ESTIMATES.—CONSTRUCTION. Where a contract requires the yardage of sand and gravel used in street work to be determined by the cubic yards in the pavement as shown by plans and specifications, the proper method of measurement is the cubic yardage of the completed work, and not the separate yardage before the materials are mixed.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered June 26, 1909, dismissing an action on contract upon granting a nonsuit, after a trial before a jury. Affirmed.

*Lynch & Grady*, for appellant.

*Englehart & Rigg* (*Bogle & Spooner*, of counsel), for respondent.

FULLERTON, J.—On May 5, 1908, the respondent entered into a contract with the city of North Yakima, by the terms of which he agreed to improve certain streets of that city according to plans and specifications attached to the contract and made a part thereof. The improvement provided for consisted in certain excavating and the laying of a pavement, and for doing this work it was provided that the contractor should be paid so much per cubic yard for the excavation and so much per square yard for the pavement laid, and that "to prevent all disputes and litigation" it was agreed that the city engineer should in all cases determine the amount of work performed under the contract, and that his estimates and decisions thereon should be final and conclusive. The specifications described minutely how the pavement should be constructed. It provided for a concrete base, four inches thick, to be composed of one part of Portland cement, three parts of sharp sand, and six parts of gravel of certain dimensions. On this was to be laid a sand cushion two inches thick, and on

the sand cushion a layer of vitrified brick, bound together with a filler of Portland cement grout, composed of one part of Portland cement and one part of fine sand.

The respondent sublet a part of the work described in the contract to the appellant. This contract was also reduced to writing, and by its terms the appellant undertook to do all the excavating required by the plans and specifications to the satisfaction of the city engineer, and to furnish and deliver on the streets of the city of Yakima all the sand and gravel necessary to complete the improvement. For the excavating the respondent agreed to pay the appellant a fixed rate per cubic yard for all material removed, the amount thereof to be "determined and decided by the city engineer of North Yakima, Washington, whose decision thereon shall be final and binding on both parties to the contract." For the sand and gravel the respondent agreed to pay "at the rate of one dollar and fifteen cents ($1.15) per cubic yard, the said amount of yardage to be ascertained and determined by the number of cubic yards actually in the concrete base as shown by the plans and specifications of said local improvement district No. 139, plus the amount of sand used in the sand cushion under the brick, and also the sand on top of the brick, 'payments to be made on or before the 5th day of each month for the preceding month up to 80 per cent of the work done,' said amount due at such times shall be ascertained and determined by the estimate of the said city engineer, whose estimates and determination shall be final and binding on both parties hereto."

The contract between the appellant and respondent was performed on the part of the appellant, and the respondent paid him for the work and for the material furnished by him in accordance with the estimates made by the city engineer. The appellant, however, felt aggrieved at the estimates. He contended that the number of cubic yards of material excavated by him and the number of cubic yards of sand and gravel hauled and delivered greatly exceeded that allowed

him by the estimates of the city engineer, and that the method of estimating the quantity of material in the concrete pavement adopted by the engineer was not in accordance with the contract, and because thereof a less quantity of materials was credited to him than a correct estimate would have allowed to him. The present action was begun to recover at the contract rate for the difference between the number of cubic yards of dirt excavated and of sand and gravel furnished which the engineer allowed in his estimates, and the number the appellant claimed to have actually excavated and furnished.

In the complaint the appellant alleged a material mistake in the contract, incompetence, mistake and fraud on the part of the engineer in making the estimates, and collusion and fraud between the respondent and the engineer practiced for the purpose of depriving him of a just estimate of the work performed by him. At the trial the appellant offered no evidence tending to prove mistake, incompetence or fraud, but evidence was offered tending to show that the grade stakes were changed a number of times during the course of the work and that the actual number of cubic yards removed exceeded the estimate made by the engineer; that the concrete base was made thicker at certain places than the specifications required, and that no allowance was made for the increased thickness; and that an erroneous method of computing the contents of the concrete had been adopted by the engineer, owing to a misconstruction of the terms of the contract. The court, however, refused to admit the proofs offered, and at the conclusion of the hearing, rendered a judgment for the respondent.

The refusal of the court to admit the appellant's proffered evidence tending to show the additional amount of excavation he was compelled to perform, and the additional amount of sand and gravel he was compelled to furnish over and above that allowed him by the engineer in his estimates, constitute the first of the errors assigned. Since one of the

questions before the court for determination was whether or not the city engineer had made such gross mistakes in judgment in making the estimates as to necessarily imply bad faith, it seems that the trial court might very properly have heard the witnesses offered, so that the comparison could have been made directly between the testimony of the witnesses and the estimates of the engineer; but as it permitted counsel to state in the record what was expected to be proved by the witnesses, any error committed in that respect is so far cured as to permit us to review the general question.

Giving to the statement made by counsel its fullest import, it seems to us it falls far short of successfully impeaching the city engineer's estimates. At most it tended to show that, on a measurement of the work done by another engineer, it was found that rather more excavation had been done than the city engineer's estimates showed, and that in certain places the concrete base and sand cushion were thicker than four inches, a uniform thickness of four inches being one of the dimensions used by the city engineer in making up his estimates. But evidence of this character is not sufficient to overthrow the judgment of an arbitrator selected by the parties to settle disputes between them. Since it is competent for parties to a contract of the nature of the present one to make it a term of the contract that all measurements and estimates of given quantities that must be made during the progress of the work shall be made by a particular individual and that his measurements and estimates shall be final and conclusive on the parties, the judgment of the person so selected, on matters properly within his authority, cannot be impeached by either party without a showing of fraud on his part, or mistake so gross as to imply bad faith, or that he had failed to exercise his honest judgment on the matters submitted to him. The evidence offered fell far short of making a case within this rule. There was no evidence of fraud, nor evidence of such a gross mistake as to imply bad faith, and it is conceded that the engineer exercised his best

judgment. This, as we say, is conclusive of the question, as mere differences between the arbitrator and those called to impeach his judgment are not sufficient to avoid the estimates.

The appellant next contends that the city engineer's measurements were founded upon a misconstruction of the contract, and that the court erred in failing to set aside his awards for that reason. He argues that a fair construction of the terms of the contract would "allow for all materials furnished and put into the concrete;" that is to say, that since the yardage measurement of concrete when mixed is less than the sum of the yardage measurements of the materials of which it is composed, some method of measurement should have been adopted that would have allowed a yardage equal to the yardage of the sand and gravel furnished if measured separately. But we do not think the contract will bear this interpretation. Its language in this particular we have elsewhere quoted, and it is minutely specific as to the manner in which the measurements shall be made to determine the cubic yards of the sand and gravel. In substance it provides that the yardage shall be ascertained by measuring the cubic yards in the concrete base, and adding thereto the number of cubic yards of sand used in the sand cushion and in the so-called filler. It was in this manner the amount was ascertained.

The other errors assigned are so closely connected with those already noticed as to require no separate consideration. The judgment will stand affirmed.

RUDKIN, C. J., GOSE, MORRIS, and PARKER, JJ., concur.